1  **LAW OFFICE OF STEWART KATZ**
2  STEWART KATZ, State Bar #127425
   555 University Avenue, Suite 270
3  Sacramento, California 95825
   Telephone: (916) 444-5678
4
5  Attorney for Annette Arellano

6                 UNITED STATES DISTRICT COURT
7                 EASTERN DISTRICT OF CALIFORNIA
8

9  ANNETTE ARELLANO,                         NO.

10         Plaintiff,

11   vs.                                     **COMPLAINT FOR DAMAGES**

12
   PAULA WOOD; COUNTY OF                     **VIOLATION OF CIVIL RIGHTS [42**
13 SACRAMENTO; CLEMENT TANG;                 **U.S.C. SECTION 1983] AND**
   Sacramento County Sheriff JOHN            **SUPPLEMENTAL STATE LAW**
14 MCGINNESS; Sacramento County Main         **CLAIMS; DEMAND FOR JURY TRIAL**
15 Jail Commander SCOTT JONES;
   Sacramento County Main Jail Commander
16 MARK IWASA; and DOES 1 through 20,
17 inclusive,

18         Defendants.
                                         /
19

20
21         Plaintiff Annette Arellano complains and alleges as follows:

22                             **I. JURISDICTION**

23         1.     This Complaint seeks damages pursuant to Title 42 U.S.C. sections 1983 and
24 1988 for the violation of Annette Arellano's civil rights and for violations of California state
25 law.  Jurisdiction is founded upon Title 28 U.S.C. sections 1331 and 1343. This Court has
26 supplemental jurisdiction over the alleged state law claims pursuant to 28 U.S.C. sections 1367.
27 //
28 //

Plaintiff Annette Arellano's Complaint for Damages; Jury Trial Demanded                    1

## II. VENUE

2. Plaintiff's claims alleged herein arose in the County of Sacramento, California. Therefore, venue lies in the Eastern District of California pursuant to 28 U.S.C. section 1391 (b)(2).

## III. INTRODUCTION

3. Over a period of eight months, while being held as pretrial detainee at the Sacramento County Main Jail, Annette Arellano was subjected to continuous sexual violations by Sacramento County Deputy Sheriffs. The perpetrators were a pathologically aggressive lesbian, Deputy Paula Wood, and an opportunistic heterosexual male, Clement Tang. In a permutation of "life imitating art" these events could have come from a montage of Roger Corman B-movies such as *The Big Doll House* or *Women in Cages*. In or about August of 2006, Defendant Deputy Paula Wood first coerced Plaintiff to engage in unlawful sexual activity. In addition to subjecting Arellano to multiple sexual assaults, Deputy Wood attempted to exert complete control over Arellano's life. Deputy Wood demanded that Arellano constantly express her love and appreciation for Deputy Wood or risk facing what Arellano found to be an ever-shortening fuse on Deputy Wood's violent temper. Deputy Wood's obsession was obvious. Deputy Wood arranged for other inmates to watch Arellano and report her every move directly to her. Deputy Wood personally monitored Arellano's communications and visits, even befriending the only relative who was in regular contact with Arellano, an elderly aunt, for the purpose of convincing Arellano that Deputy Wood was, in fact, in complete control of her life.

4. An "investigation" in January 2007 cleared Deputy Wood of any wrongdoing, thus empowering her further and deepening Arellano's sense of hopelessness. Arellano was never interviewed in that "investigation." The reporting inmate was disciplined for making a false report.

5. The conduct continued until an investigation was conducted by Internal Affairs in April of 2007. Deputy Wood was ultimately charged and found guilty of criminal charges. Tang was allowed to resign.

6. As a result of these Defendants' illegal sexual acts, which continued for a period of approximately eight months, Plaintiff suffered and continues to suffer damages including, but not limited to, severe emotional distress, invasion of her bodily integrity, physical and mental injury and anguish. Through this action, Plaintiff seeks compensation for her injuries, pain and suffering, emotional distress and legal expenses. Plaintiff also seeks punitive damages against the individual Defendants.

## IV. PARTIES

7. During all times mentioned in this Complaint, Plaintiff Annette Arellano was, and is, a United States citizen. Plaintiff resides in the County of Sacramento, California, and at the time of the acts alleged herein was a pretrial detainee at the Sacramento County Main Jail.

8. Defendant County of Sacramento is a political subdivision of the State of California, created and existing by virtue of the laws of the State of California.

9. Defendant Paula Wood was, during all times mentioned herein, a Sacramento County Sheriff's Deputy employed by Defendant County of Sacramento at the Sacramento County Main Jail.

10. Defendant Clement Tang was, during all times mentioned herein, a Sacramento County Sheriff's Deputy employed by Defendant County of Sacramento at the Sacramento County Main Jail.

11. Defendant John McGinness is, and was at all times mentioned herein, the Sheriff of the Sacramento County Sheriff's Department. Defendant John McGinness is being sued in his individual capacity.

12. Defendant Scott Jones is, and was at some of the times mentioned herein, a Captain with the Sacramento Sheriff's Department and the Commander of the Sacramento County Main Jail and employed by the County of Sacramento.

13. Defendant Mark Iwasa was, at some of the times mentioned herein, a Captain with the Sacramento Sheriff's Department and the Commander of the Sacramento County Main Jail and employed by the County of Sacramento and acting in that capacity.

14. The true names and identities of Defendants Does 1 through 20 are presently

unknown to Plaintiff. Plaintiff alleges on information and belief that each of Defendants Does 1 through 20 were employed by the County of Sacramento and/or the County of Sacramento Sheriff's Department during the time of this incident. Plaintiff will seek to amend this Complaint as soon as the true names and identities of Does 1 through 20 have been ascertained.

15. Defendants, and each of them, to the extent they engaged in any acts or omissions alleged herein, and unless otherwise indicated by this Complaint, engaged in such acts and/or omissions under color of state law.

16. Plaintiff is informed and believes and thereon alleges that at all times mentioned in this Complaint, Defendants, and each of them, were the agents, employees, servants, joint venturers, partners and/or co-conspirators of the other Defendants named in this Complaint and that at all times, each of the Defendants were acting within the course and scope of said relationship with Defendants.

## V. EXHAUSTION OF GOVERNMENT TORT CLAIM PROCEDURES

17. Plaintiff filed a timely government tort claim with the County of Sacramento on or about September 27, 2007, as a precondition to the state law claims alleged in this action.

18. Notice that Plaintiff's tort claim had been rejected was conveyed in a letter dated January 2, 2008.

## VI. FACTUAL ALLEGATIONS

19. Plaintiff Annette Arellano, at the time of the events detailed herein, was being held as a pretrial detainee at the Sacramento County Main Jail. Arellano was facing several non-violent, non-serious felony charges.

20. Arellano had been at the Sacramento County Main Jail since approximately December 20, 2004. At the time the conduct described began, she had been at the Jail for approximately twenty months.

21. Arellano was 38 years old and a divorced mother of two when the conduct alleged herein began. Her consensual sexual activities have all been heterosexual.

22. Arellano is 5'6" tall with brown hair and brown eyes and she weighed

approximately 145 pounds prior to these events. During the course of these events, her weight dropped to 122 pounds. Unlike the vast majority of female inmates at the Sacramento County Main Jail, Arellano is Caucasian.

23. Arellano has a history of significant back problems stemming from an accident when she was 18. After the accident, she had spinal surgery, which included the insertion of several rods running along her spine. At the time of the conduct described herein, she was in need of additional surgery and was physically vulnerable because of her back. Arellano was in no condition to physically defend herself from either a sexually aggressive guard or any fellow inmate.

24. Arellano has a history of being victimized. As a child she was sexually abused. As an adult she was physically battered in several relationships, including the relationship with her ex-husbands.

25. Arellano has a history of depression and sleep disorders, which increased her level of vulnerability while in the jail.

26. As a result of being deprived of sunlight, Arellano's pallor was that of a white, porcelain Dresden Doll with large, Kewpie-ish, bright eyes.

27. Deputy Paula Wood was an aggressive, openly homosexual deputy who, at her request, was assigned to work at a female housing unit in the main jail. She had successfully resisted several suggestions that she change assignments.

28. Deputy Tang was a male deputy working in the jail's basement, whose job involved herding inmates into the correct courtrooms and attorney visitation booths.

29. Arellano became aware that Deputy Wood was becoming obsessed with her when, while in the control room of her housing unit, Deputy Wood held up a sign stating, "You fascinate me."

30. At first, Deputy Wood merely feigned a heightened interest in Arellano's well-being and situation; however, Arellano quickly learned that Deputy Wood had both a sexual and romantic interest in her.

31. The confines of a correctional facility imposed limitations but not bars to Deputy

Wood acting on her sexual fantasies. Deputy Wood used the intercom system for "phone sex" while she sat in the control room and Arellano was in her cell. Deputy Wood utilized other inmates as lookouts when she entered Arellano's cell to perform sexual acts, including oral copulation and digital penetration. On occasion, Deputy Wood found that a storage closet was a convenient location to act on her desires with Arellano. Arellano estimates that there were 20 separate times she was compelled to engage in sexual activity with Deputy Wood.

32.   Deputy Wood used and rewarded inmates for acting as lookouts while she had sex with Arellano.

33.   Deputy Wood used a network of inmates to keep an eye on her love interest, Arellano. Deputy Wood would receive constant reports on everything Arellano said, did or looked at. Deputy Wood rewarded the cooperating inmates.

34.   Using her position, Deputy Wood examined every piece of paper in Arellano's cell, everything she wrote or read and monitored her social visits.

35.   In order to further insert herself into Arellano's life, Deputy Wood befriended the only relative with whom Arellano had regular contact, an 80 year-old aunt. Feigning concern, she used Arellano's aunt to further control information to and from Arellano as well as to remind her that Deputy Wood not only had the power to physically harm her, but that she could also cause harm to her aunt.

36.   Arellano had been French-kissed on one occasion by Deputy Tang while she was the sole occupant of a holding cell awaiting a court appearance. Tang would regularly subject her to a constant stream of sexually inappropriate remarks when she was going to and from court. In an ironic twist, Deputy Wood vented to Arellano how mad it made her that Tang would use his position to take advantage of Arellano and how it sickened her.

37.   Deputy Wood apparently did not merely view Arellano as a sexual plaything. She had a need for Arellano to constantly express her love and appreciation towards Deputy Wood. When Deputy Wood did not receive the thanks and affection she desired, she was quick to anger and would explicitly remind Arellano of the precariousness of her situation and the fact that Deputy Wood "owned her." The pinnacle of this delusion was when Deputy Wood

proposed marriage to Arellano and showed her an engagement ring she purchased for her.

38. While some inmates apparently received compensation in exchange for their assisting Deputy Wood, some of those same inmates, as well as other inmates, verbalized their disgust toward the situation. As a result, Arellano was in constant fear that she would be attacked and beaten by her fellow inmates, as well as being in fear of Deputy Wood. Deputy Wood told Arellano on at least one occasion that she would "end her" if she said or did anything that could cause Wood problems.

39. In January of 2008, a fellow inmate reported the situation. An "investigation" conducted as a divisional inquiry by jail staff was undertaken. No one attempted to speak to Arellano during the course of this investigation. Not only was Deputy Wood quickly cleared, but apparently the reporting inmate received discipline for bringing a false complaint against an officer. Deputy Wood crowed to Arellano that this guaranteed that nothing would interfere with their relationship. Arellano took this as a further indication of the hopelessness of her situation.

40. If possible, Deputy Wood exercised even less discretion and self-control following the January investigation. Eventually, it is believed that a former inmate reported the situation to the Sacramento Sheriff's Department Internal Affairs Unit.

41. Internal Affairs undertook an investigation with the assistance of Arellano's aunt who successfully placed a pretext phone call to Deputy Wood.

42. Deputy Wood was placed on administrative leave in late April of 2007. She eventually was allowed to resign her position.

43. Tang was allowed to retire and collect his pension.

44. Throughout this time, Arellano was in tremendous physical pain because the rods in her back had started to protrude, visibly, from both ends. However, because she feared retaliation, she was petrified and unwilling to have the medical procedure to remove the rods performed while she was in custody. She feared that the procedure might be sabotaged or that she would be absolutely physically helpless post-operatively, placing her in an even more vulnerable and frightening situation. Arellano's fears of retaliation were validated by her having her legal mail regarding her abuse intercepted and hearing a deputy express surprise that she

1  was still there, and in one piece, after having "taken two deputies down."

2      45. Arellano was paroled from the Sacramento County main Jail on June 12, 2008.

3      46. Deputy Wood was criminally charged with illegal sex with an inmate as proscribed by California Penal Code section 289.6. She was found guilty of the charge on May 28, 2008.

    47. The Sacramento Sheriff's Department believes that there is something about a man or woman in uniform that makes them sexually irresistible. The department has a custom and practice of dismissing reports of inappropriate coercive sexual acts by deputies of either gender, whether in the jail or elsewhere, as being consensual conduct.

    48. The Sacramento Sheriff's Department has a custom and practice of inadequately investigating complaints of misconduct, particularly when those investigations are undertaken as divisional inquiries. They frequently fault the complainants for bringing, what they deem to be, false allegations. Many of these investigations, under the explicit policies of the department, should have been redirected to the Internal Affairs Unit for investigation.

    49. The Sacramento Sheriff's Department has a custom and practice of imposing inadequate discipline on individuals acting in a sexually inappropriate manner while in the scope of their employment.

    50. The Sacramento Sheriff's Department provides inadequate training to its officers, particularly those working in the correctional division, regarding the sexual vulnerability of individuals in custody.

    51. The Sacramento Sheriff's Department has a custom and practice of allowing deputies to use inmates as their surrogates to engage in illegal actions, including retaliation.

    52. The Sacramento Sheriff's Department has a custom and practice of inadequate supervision at the jail, thus increasing the prevalence of sexual misconduct.

///
///
///
///

## VII. CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**Cruel and Unusual Punishment**
**(42 U.S.C. Section 1983)**
*Against Defendants Deputy Wood, Tang, Does 1 through 10*

53. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 52, as though fully set forth herein.

54. The actions of the Defendants Deputy Wood, Tang and Does 1 through 10 alleged herein including, but not limited to, sexually assaulting her multiple times, constituted cruel and unusual punishment. Such conduct violated Plaintiff's rights as protected by the Eighth Amendment of the United States Constitution.

55. As a direct and proximate result of said acts and/or omissions by Defendants, Plaintiff suffered unreasonable interference with her person, and injuries.

56. The aforementioned acts and/or omissions of the individually named Defendants were malicious, reckless and/or accomplished with a conscious disregard of Plaintiff's rights thereby entitling Plaintiff to an award of exemplary and punitive damages according to proof.

### SECOND CAUSE OF ACTION
**Violation of Substantive Due Process**
**(42 U.S.C. Section 1983)**
*Against Defendants Deputy Wood, Tang and Does 1 through 10*

57. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 56, as though fully set forth herein.

58. The conduct alleged herein, including but not limited to Defendants Deputy Wood, Tang and Does 1 through 10 inappropriately touching Plaintiff and coercing Plaintiff to engage in sexual acts, including oral copulation and digital penetration, was unreasonable and shocking. Such conduct constituted a violation of Plaintiff's due process rights as defined by the Fourteenth Amendment to the United States Constitution. Such rights include the right to be free from sexually motivated physical assaults and coerced sexual battery.

59. As a direct and proximate result of said acts and/or omissions of Defendants,

Plaintiff Annette Arellano's Complaint for Damages; Jury Trial Demanded      9

1 Plaintiff suffered emotional distress and a loss of her personal liberty. Furthermore, said acts
2 were a proximate cause of Plaintiff's damages and injuries as alleged herein.

3   60.   The aforementioned acts and/or omissions of the individually named Defendants were willful, malicious, reckless and/or accomplished with a conscious disregard of Plaintiff's rights thereby entitling Plaintiff to an award of exemplary and punitive damages according to proof.

## THIRD CAUSE OF ACTION

### Sexual Harassment/Equal Protection
### (42 U.S.C. Section 1983)
*Against Defendants Deputy Wood, Tang and Does 1 through 10*

61.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through 60, as though fully set forth herein.

62.   The conduct alleged herein, including but not limited to Defendants Deputy Wood, Tang and Does 1 through 10 inappropriate touching of Plaintiff and coercing Plaintiff to engage in sexual acts, including oral copulation and digital penetration, was done on account of Plaintiff's gender. Such conduct was in violation of Plaintiff's right to equal protection of the laws as established by the Fourteenth Amendment of the United States Constitution.

63.   As a direct and proximate result of said acts and/or omissions by Defendants, Plaintiff suffered unreasonable interference with her personal liberty. Furthermore, said acts were a proximate cause of Plaintiff's injuries and damages as alleged herein.

64.   The aforementioned acts and/or omissions of the individually named Defendants were willful, malicious, reckless and/or accomplished with a conscious disregard of Plaintiff's rights thereby entitling Plaintiff to an award of exemplary and punitive damages according to proof.

///
///
///
///
///

## FOURTH CAUSE OF ACTION

**De Facto Policies and Procedures – Municipal Liability**
**(42 U.S.C. section 1983)**
*Against Defendants County of Sacramento, McGinness, Iwasa, Jones and Does 11- 20*

65. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 64, as though fully set forth herein.

66. The aforementioned act and/or omissions of Defendants County of Sacramento, McGinness, Iwasa, Jones and Does 11 through 20 have resulted in de facto policies, customs and practices that resulted in the injuries described herein. These de facto policies, customs and practices include dismissing reports of coerced sexual acts by deputies as consensual, inadequately investigating complaints of sexual misconduct, permitting allegations of serious misconduct to be treated as divisional inquiries, imposing inadequate discipline and allowing inmates to act as surrogates for officers to undertake illegal acts.

67. As a direct and proximate result of the aforementioned formal policies and practices of said Defendants, Plaintiff suffered injuries and damages as alleged herein.

## FIFTH CAUSE OF ACTION

**Supervisory Liability**
**(42 U.S.C. section 1983)**
*Against Defendants County of Sacramento, McGinness, Iwasa, Jones and Does 11- 20*

68. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 67, as though fully set forth herein.

69. The aforementioned acts and/or omissions of Defendants County of Sacramento, McGinness, Iwasa, Jones and Does 11 through 20 were the direct and proximate cause of a failure to adequately supervise their employees so as to prevent the constitutional violations. These failures included the inadequate investigation and discipline of misconduct by subordinates, including de facto ratification as demonstrated by inadequate discipline, the failure to adhere to written policies and the failure to adequately staff supervisors so as to permit proper supervision

70. As a direct and proximate result of said acts and/or omissions of Defendants,

Plaintiff suffered emotional distress and a loss of her personal liberty. Furthermore, said acts were a proximate cause of Plaintiff's damages and injuries as alleged herein.

71. The aforementioned acts and/or omissions of the individually named Defendants were willful, malicious, reckless and/or accomplished with a conscious disregard of Plaintiff's rights thereby entitling Plaintiff to an award of exemplary and punitive damages according to proof.

### SIXTH CAUSE OF ACTION

**Inadequate Training**
**(42 U.S.C. section 1983)**
*Against Defendants County of Sacramento, McGinness, Iwasa, Jones and Does 11- 20*

72. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 71, as though fully set forth herein.

73. The aforementioned acts and/or omissions of Defendants County of Sacramento, McGinness, Iwasa, Jones and Does 11 through 20 were the direct and proximate cause of a failure to adequately train their employees so as to prevent the constitutional violations. This failure to train includes failing to train officers in how to conduct adequate investigations of allegations of sexual misconduct, failure to train regarding the particular sexual vulnerability of individuals in custody and a failure to train regarding the coercive effect of someone operating under color of law.

74. As a direct and proximate result, said acts and/or omissions of Defendants, Plaintiff suffered emotional distress and a loss of her personal liberty. Furthermore, said acts were a proximate cause of Plaintiff's damages and injuries as alleged herein.

### SEVENTH CAUSE OF ACTION

**Battery**
**(California State Common Law)**
*Against Defendants County of Sacramento, Deputy Wood, Tang and Does 1through 10*

75. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 74, as though fully set forth herein.

76. The conduct of Defendants County of Sacramento, Deputy Wood, Tang and Does 1 through 10 as alleged herein was wrongful, intentional and unwelcome bodily

contact constituting battery.

77. Said conduct was the proximate cause of Plaintiff's damages and injuries as alleged herein.

78. Defendant County of Sacramento is vicariously liable for the conduct of Defendants Deputy Wood, Tang and Does 1 through 10.

79. The aforementioned acts of the individually Defendants Deputy Wood, Tang and Does1 through 10 were willful, malicious, reckless and/or accomplished with a conscious disregard of Plaintiff's rights thereby entitling Plaintiff to an award of exemplary and punitive damages according to proof.

### EIGHTH CAUSE OF ACTION
**Unreasonable Seizure**
**(California State Law Claim-Violation of the Cal. Constitution Art. I §§ 1, 13, and Cal. Civil Code § 43**
**Actionable under Cal. Civil Code § 52.1(b)/Bane Act**
*Against Defendants Deputy Wood, Tang and Does 1 through 10*

80. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 79, as though fully set forth herein.

81. The actions of Defendants Deputy Wood, Tang and Does 1 through 10, as alleged herein, interfered with the exercise and enjoyment of Plaintiff's civil rights as guaranteed by Article I §§ 1 and 13 of the California Constitution. Specifically, Defendants, and each of them, interfered with Plaintiff's rights by use of threat or intimidation when Defendants groped, kissed, and engaged in illegal sexual activity with Plaintiff while she was a detainee at the Sacramento County Main Jail.

82. Defendants actions constituted an unreasonable seizure, a violation of Plaintiff's right to bodily integrity, and further interfered with Plaintiff's personal rights as guaranteed by § 43 of the California Civil Code.

83. As a direct and proximate result of said acts and/or omissions by Defendants, Plaintiff suffered unreasonable interference with her personal liberty, intimidation, pain and suffering, emotional distress and other injuries.

84. Defendants' violations of Plaintiff's rights as guaranteed by Civil Code § 52.1

(Bane Act) entitles Plaintiff to compensatory and punitive damages, a $25,000 civil penalty, attorney fees, and injunctive relief all of which are provided for in Civil Code §§ 52.1(b) and 52, and are requested below.

85. The aforementioned acts and/or omissions of said Defendants were willfull, intentional, wanton, reckless and/or accomplished with a conscious disregard of Plaintiff's rights as secured by Civil Code § 52.1, thereby entitling Plaintiff to an award of punitive damages pursuant to Civil Code § 52(b)(1).

### NINTH CAUSE OF ACTION
### NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION

(California State Common Law)
*Against Defendants County of Sacramento, McGinness, Iwasa, Jones and Does 11- 20*

86. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 85, as though fully set forth herein.

87. Defendants County of Sacramento, McGinness, Iwasa, Jones and Does 11 through 20 have a duty to hire, supervise, train and retain employees so that they refrain from the conduct alleged herein.

88. Defendants breached this duty, causing the conduct alleged herein. Such breach constituted negligent hiring, supervision, training and retention under the laws of the State of California.

89. Such breach proximately caused damages and injuries to Plaintiff as alleged herein.

### VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1. For compensatory, general and special damages law (including damages under Civil Code §52(b)(1) and civil penalties under Civil Code § 52(b)(2)), against each Defendant, jointly and severally, to the extent permitted by law, in the amount proven at trial;

2.	For punitive and exemplary damages against each nonentity Defendant, as allowed by law in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct;

3.	For costs and reasonable attorneys' fees pursuant to 42 U.S.C. 1983 and Civil Code § 52.1 and §52(b)(3) and as otherwise authorized by statute or law;

4.	For such other relief as the Court deems just and proper.

Dated: June 29, 2008                                         Respectfully submitted,

/s/ Stewart Katz
Stewart Katz,
Attorney for Plaintiff

### DEMAND FOR TRIAL BY JURY

Plaintiff Annette Arellano hereby demands trial by jury.

Dated: June 29, 2008                                         /s/ Stewart Katz

Stewart Katz,
Attorney for Plaintiff